UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY C. ROBISON

    Plaintiff,

  v.

OAKLEY CONSTRUCTION COMPANY,

    Defendant.

No. 12 CV 10210

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony Robison, an African-American former employee of defendant Oakley Construction Company, claims the company violated Title VII and Section 1981 by firing him on the basis of race. Defendant, a certified minority-owned business, denies plaintiff's allegations and moves for summary judgment. For the following reasons, defendant's motion is denied.

## I.    Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether

a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

II. **Background**

Defendant is a minority-owned and -operated general construction company.[1] Dkt. 58 ¶ 2. In 2008, it won a contract to work on the Rush University Medical Center Transformation Program. *Id.* ¶¶ 5-6. Defendant's role was to supply laborers and carpenters as requested by Power Jacobs—the joint venture in charge of the project. *Id.* ¶ 5.

In 2010, defendant hired plaintiff to work as a laborer on the Rush site. *Id.* ¶¶ 9, 22, 24-25, 31, 35. Plaintiff performed a variety of tasks in this position, including demolition, sweeping floors, removing garbage, cleaning toilets, and remediating flood water. Dkt. 77 at 184:4-23. After just six weeks on the job, however, plaintiff was laid off. Dkt. 58 ¶¶ 31, 53-54.

Defendant explains the layoff by saying Power Jacobs instructed it to reduce its laborer workforce by one. *Id.* ¶¶ 53-54. Because plaintiff was the last to be hired, defendant states, he was also the first to be fired. Dkt. 79 at 169:8-11. Plaintiff rejects this explanation. He believes he was let go because his supervisor, Hector Romero, generally favored Hispanics over African Americans and specifically wanted to replace plaintiff with a Hispanic laborer. Dkt. 59 ¶¶ 1-13, 21, 25. Indeed,

---

[1] Defendant's owners, Augustine Afriyie and Anthony Kwateng, are both African American. Dkt. 58 ¶ 2; *See* Dkt. 52-6 at 194:15-16.

2

the record shows that the day after plaintiff was let go, a Hispanic laborer recommended by Romero began working for defendant at the Rush site. *Id.* ¶ 28, 30.

Plaintiff's First Amended Complaint states claims for intentional discrimination in violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981) and the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq.*). Defendant moves for summary judgment on both claims. *See* Dkt. 49.

## III. Analysis

A plaintiff can prove discrimination[2] either "directly" or "indirectly." *See Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). Under the direct method, the plaintiff must provide direct or circumstantial evidence of intentional racial discrimination. *See Schandelmeier–Bartels v. Chicago Park District*, 634 F.3d 372, 378-79 (7th Cir. 2011). In discrimination cases, circumstantial evidence is typically divided into three different categories: (1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *See Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). "Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the

---

[2] The substantive standards and methods of proof that apply to claims of racial discrimination under Title VII also apply to claims under Section 1981. *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012).

case) to support a judgment for the plaintiff; or they can be used together." *Id.* (citing *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)).

Proving discrimination also requires a showing that the person who exercised the authority to fire the plaintiff did so with discriminatory intent. *Schandelmeier–Bartels*, 634 F.3d at 378-79. Alternatively, under a "cat's paw" theory, the plaintiff can prove his claim by showing that someone with discriminatory intent proximately caused the plaintiff to be fired. *Nichols v. Michigan City Plant Planning Department*, 755 F.3d 594, 604 (7th Cit. 2014); *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1459 (7th Cir. 1994). In the latter case, "[p]roximate cause requires only some direct relation between injury asserted and injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect." *Staub v. Proctor Hospital*, ___ U.S. ___, 131 S. Ct. 1186, 1192 (2011) (citations and quotations omitted).

In this case, plaintiff offers each category of circumstantial evidence to support his claim under the direct method. For evidence of suspicious timing, plaintiff presents three of defendant's business records which show that a Hispanic laborer named Edgar Montenegro started working for defendant at the Rush site the day after plaintiff was laid off, even though defendant claimed Power Jacobs forced it to reduce its laborer workforce by one. Dkt. 59 ¶ 15. Plaintiff also presents project manager Michael Washington's testimony that Romero was the one who recommended that Montenegro be hired. *Id.* ¶ 30.

For evidence of ambiguous statements and behavior, plaintiff testified to a number of ways in which Romero intentionally antagonized him. First, in June 2010, Romero sabotaged plaintiff by providing incorrect instructions on where to report for the first day of work. Dkt. 77 at 156:15-157:15. When plaintiff eventually arrived at the correct location, he was sent home for being late and was not re-hired by defendant for almost three months. *Id.*; Dkt. 58 ¶¶ 26, 31. Second, on plaintiff's first day of work in August 2010, Romero "threatened [his] employment" during their first conversation, before plaintiff had even performed any work. Dkt. 59 ¶ 32. Third, Romero would instruct plaintiff to go to an area in the job site and then question his competence for being there. *Id.* ¶ 33. Finally, plaintiff testified that Romero singled him out by writing him up for unmerited infractions while others, such as Hispanic laborer Martin Martinez, received no write ups for similar behavior. Dkt. 77 at 69:2-77:8, 80:3-20, 204:7-10; Dkt. 59 ¶ 7.

For evidence that similarly situated employees outside the protected class received systematically better treatment, plaintiff presents evidence that Romero systematically favored Hispanic laborers over African American laborers. Harold Watts, who used to work for defendant, testified that Romero gave Hispanic laborers easier jobs and less work. Dkt. 59 ¶ 2. Watts claimed "that there was different treatment for blacks and women than it was for Hispanic men." Dkt. 75 at 165:14-166:12. Watts further stated that "Romero often assigned [him] and other African American employees to perform the dirtiest, most physically demanding and least desirable work assignments while assigning Hispanic employees to

5

perform the easiest and most desirable work assignments." Dkt. 83 ¶ 10. For example, Watts explained that when Hispanic laborer Mike Camacho was assigned to "flagging" (i.e., controlling traffic) he was not required to stand in the road, but instead "stood by the gate and could go inside out of the rain." Dkt. 59 ¶ 4. By contrast, African American laborers who were flagging would have to remain outside in the rain and snow for 12-hour days. Dkt. 75 154:2-12. Finally, Watts said Romero favored the Hispanic laborers by being "on [their] back" less and not calling them "lazy" the way he called African American laborers "lazy." Dkt. 59 ¶ 3; Dkt. 83 ¶ 12.

For evidence that the employer offered a pretextual reason for an adverse employment action, plaintiff presents Daily Construction Reports which show that (1) in the weeks leading up to plaintiff's layoff, (2) the day after his layoff, and (3) in the week following his layoff, defendant consistently employed seven laborers. Dkt. 59 ¶ 20. This evidence arguably puts into question defendant's primary[3] explanation for why it let plaintiff go—that Power Jacobs instructed defendant to reduce its laborer workforce by one. Dkt. 50 at 7. As for defendant's claim that plaintiff was chosen because he was the most junior person on the team, both

---

[3] At different times defendant has given different reasons for why it let plaintiff go. In its response to plaintiff's interrogatories, defendant said it let him go because "[p]laintiff was a recent hire and had documented performance deficiencies." Dkt. 68 ¶ 4. However, defendant's project manager Washington—who was personally involved with the decision— affirmatively denied that plaintiff was let go due to performance deficiencies and said it was only because "he was the last person that was hired." Dkt. 79 at 167:2-11, 169:8-11. *See Rudin v. Lincoln Land Community College*, 420 F.3d 712, 726-27 (7th Cir. 2005) ("This court's decisions make it clear that '[o]ne can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision.'") (quoting *Appelbaum v. Milwaukee Metropolitan Sewerage District*, 340 F.3d 573, 579 (7th Cir. 2003)).

Romero and union steward Derrick Williams testified that personnel decisions were not made based on seniority. *Id.* ¶ 18. Furthermore, in January 2010, two African American laborers were laid off at the same time that a Hispanic laborer with less seniority was retained. *Id.*

Lastly, although plaintiff presents no evidence of intentional racial discrimination by Washington or owner Anthony Kwateng—the ones who ultimately chose to let plaintiff go—he presents enough evidence in support of a cat's paw theory to survive summary judgment. S*ee Dey*, 28 F.3d at 1459 ("Summary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action."). Specifically, plaintiff identifies portions of Washington's deposition transcript in which he testified that he—along with Kwateng—decided to lay off plaintiff "at the suggestion of" Romero and carpenter foreman George Rangel. Dkt. 59 ¶ 21.

Defendant argues plaintiff has failed to show that "Romero *drove the decision* to terminate [plaintiff's] employment based on his race." Dkt. 101 at 6 (emphasis in original). That is not required, however. Instead, plaintiff must show only that Romero proximately caused his termination on the basis of race. *See Staub*, 131 S. Ct. at 1192. Defendant also notes that plaintiff "cannot point to any communications between Romero and Washington that could be construed as intentional attempts to layoff [plaintiff] from his employment based on his race . . . ." Dkt. 101 at 7. Again, defendant misstates the standard. If plaintiff proves

7

Romero recommended that he be let go because plaintiff is African American, plaintiff need not prove that Romero communicated any alleged prejudice to Washington. *See Dey*, 28 F.3d at 1459. Finally, defendant's claim that "[t]here is no evidence to suggest Hector Romero's input or suggestion was the causal factor in Michael Washington's decision," Dkt. 101 at 7, is belied by Washington's testimony that the decision to lay off plaintiff was made "at the suggestion of" Romero and Rangel, Dkt. 79 at 169:12-14.

In sum, plaintiff has put forth enough circumstantial evidence to allow a jury to reasonably conclude that he was let go on the basis of race. *See Mullin v. Temco Machinery*, 732 F.3d 772, 780 (7th Cir. 2013). In *Mullin*, the plaintiff sought to prove his age discrimination claim using the direct method. *Id*. at 777. To that end, he presented evidence that the defendant fired two salesmen in their fifties and hired two salesmen in their twenties all in a little over a week. *Id*. He also presented evidence that the defendant's CEO commented at his deposition about one of the new hires' young age. *Id*. at 778. Finally the plaintiff set forth evidence genuinely contesting each of the defendant's shifting reasons for why it fired the plaintiff. *Id*. at 778-80. On this evidentiary basis, the Seventh Circuit held that:

> Standing alone, none of these incidents, events, or alleged justifications would likely suffice for Mullin to survive summary judgment. In combination, however, they point to a string of questionable conduct, from the suspicious timing of personnel decisions to ambiguous statements about age to multiple seemingly inaccurate allegations. Mullin genuinely contests all of Temco's accusations. He has put forth sufficient evidence that the jury should resolve the many material factual questions, as well as the credibility issues underlying them. Of course, we express no view on the ultimate merit of Mullin's claims. When, as here, the "facts are susceptible to two

8

interpretations," the Supreme Court has cautioned against granting summary judgment "too readily."

*Mullin*, 732 F.3d at 780.

So too here, plaintiff "has put forth sufficient evidence that the jury should resolve the many material factual questions."[4]

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment, Dkt. 49, is denied.

ENTER:

                                              Manish S. Shah
                                              United States District Judge

Date: 8/20/14

---

[4] At times plaintiff appears to claim that Rangel discriminated against him on the basis of race as well. *See, e.g.*, Dkt. 16 ¶ 15. Essentially all of plaintiff's argument and evidence, however, focuses on Romero alone. Thus, I deny defendant's motion only on the basis of plaintiff's showing as to Romero.

9